UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN - NORTHERN DIVISION
_____

| | |
|---|---|
| ACKERMAN & SON LLC; ACKERMAN BROTHERS FARMS, LLC; BACK ROAD FARMING, INC.; et al.; | Case No: <br> Hon. _____ <br> Mag. J. _____ |
| Plaintiffs, | |
| v | **COMPLAINT FOR JUDICIAL REVIEW OF AGENCY ACTIONS, DECLARATORY AND INJUNCTIVE RELIEF, AND OTHER RELIEF** |
| BROOKE ROLLINS, in her capacity as Secretary of the United States Department of Agriculture, PATRICIA SWANSON, Administrator U.S. Department of Agriculture Risk Management Agency and Director of the Federal Crop Insurance Corporation, | |
| Defendants. | |

_____

John D. Tallman (P32312)
JOHN D. TALLMAN, PLC
Attorneys for Plaintiffs
4020 East Beltline Ave. N.E. – Suite 101
Grand Rapids, MI  49525
(616) 361-8850

_____

## COMPLAINT FOR JUDICIAL REVIEW OF AGENCY ACTIONS, DECLARATORY AND INJUNCTIVE RELIEF, AND OTHER RELIEF

Plaintiffs, by and through their attorney, John D. Tallman, for their Complaint for

Judicial Review and Other Relief, state as follows:

### INTRODUCTION

1.     Plaintiffs request judicial review of final agency action and other relief

related to crop insurance known as the 2015 Dry Bean Revenue Endorsement (DBRE).

1

This complaint is brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701, et seq., for declaratory and injunctive relief from administrative determinations issued by the Federal Crop Insurance Corporation ("FCIC") and the Risk Management Agency ("RMA").  The complaint also requests declaratory and injunctive relief, and contract reformation or rescission.  The administrative determination that is the subject of this action relates to the establishment of a "harvest price" under the DBRE; in particular, the Board of Directors' Order of May 18, 2023 that affirmed the approval of the 2015 Submission of the Dry Bean Modification and Expansion, even though that Submission had been characterized as "essentially worthless" by the Sixth Circuit Court of Appeals (*Ackerman v. United States Dept. of Agriculture*, 995 F. 3d 528, 533-34 (6th Cir. 2021)).

2.     The 2023 Order was a ratification of the FCIC approval of the DBRE in 2012, the FCIC approval of the expansion of the DBRE to Michigan in 2013, the December 15, 2015 RMA interpretation of the 2015 Dry Bean Revenue Endorsement ("DBRE"), and the March 8, 2016 RMA interpretation of the 2015 DBRE, all of which have been the subject of prior litigation in this Court.

3.     The purpose of DBRE crop insurance was to protect dry bean farmers against a market price decline.  Although dry bean market prices declined greatly in 2015, no indemnity was paid to Plaintiffs because adverse determinations were made by Defendants RMA and FCIC related to the establishment of a "harvest price" under the DBRE for navy beans and small red beans in Michigan.

4.     Plaintiffs seek a declaratory judgment that the May 18, 2023 determination issued by the FCIC was arbitrary, capricious, an abuse of discretion, and

2

not in accordance with law; was contrary to statutes and other law; was without observance of procedure required by law; and was unwarranted by the facts. Plaintiffs further seek an order directing that the adverse determinations of FCIC and RMA be set aside pursuant to the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. § 701, et seq. (2003); that Defendants be enjoined to set a harvest price based on actual market prices for the 2015 crop year as required by 7 USC § 1508; that Defendant agencies be enjoined to take action to ensure that Plaintiffs' losses are indemnified or to take action to ensure that the premiums paid for DBRE insurance are reimbursed to Plaintiffs; and that Defendants be enjoined from taking any action inconsistent with the judgment of this Court.

## THE NAMED PARTIES

5.    Plaintiff Ackerman & Son LLC is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

6.    Plaintiff Ackerman Brothers Farms, LLC is a Michigan farm that farms in Bay County and Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

7.    Plaintiff Back Road Farming, Inc. is a Michigan farm that farms in Huron County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

8.    Plaintiff Daniel E. Balcer is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

9.      Plaintiff Bauer Farms, Inc. is a Michigan farm that farms in Saginaw County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

10.     Plaintiff Becker Farms, LLC is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

11.     Plaintiff Randy Becking is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

12.     Plaintiff Bernia & Sons Farms, Inc. is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

13.     Plaintiff Bernia Family Farms, Inc. is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

14.     Plaintiff Brian Brandenburg is a Michigan resident who farms in Huron County and Tuscola County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

15.     Plaintiff Gary Bulzan is a Michigan resident who farms in Lapeer County and St. Clair County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

16.     Plaintiff D. T. Rouech Farms, LLC is a Michigan limited liability company that farms in Bay County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

17.     Plaintiff Todd W. Draggoo is a Michigan resident who farms in Sanilac County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

18.     Plaintiff Beatrice Elenbaum is a Michigan resident who farms in Huron and Tuscola Counties, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

19.     Plaintiff French Farms, a Michigan partnership, farms in Bay County, Michigan, and grew dry beans (navy or small red beans) insured by the DBRE in 2015.

20.     Plaintiff Harry Gaiser, Jr. is a Michigan resident who farms in Bay County and Saginaw County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

21.     Plaintiff Jason Gaiser is a Michigan resident who farms in Bay County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

22.     Plaintiff Goebel Farms, Inc. is a Michigan farm that farms in Huron County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

23.     Plaintiff James Gremel is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

24.     Plaintiff Gro Green Acres, a Michigan partnership, farms in Huron County, Michigan, and grew dry beans (navy or small red beans) insured by the DBRE in 2015.

25.     Plaintiff Gruehn Farms, Inc. is a Michigan farm that farms in Huron County, Michigan, and which grew dry beans (navy or small red beans) insured by the DBRE in 2015.

26.     Plaintiff Gruehn Acre Farms, Inc. is a Michigan farm which farms in Huron County, Michigan, and which grew dry beans (navy or small red beans) insured by the DBRE in 2015.

27.     Plaintiff Jason Haag is a Michigan resident who farms in Huron County and Tuscola County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

28.     Plaintiff Terry Haag is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

29.     Plaintiff Tom Haag, Inc. is a Michigan farm that farms in Huron County and Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

30.     Plaintiff Scott Hawken is a Michigan resident who farms in Tuscola County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

31.     Plaintiff John Schluckebier Farms, Inc. is a Michigan farm which farms in Saginaw County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

32.     Plaintiff Fred Karg is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

33.     Plaintiff Kreger Farms, LLC is a Michigan farm that farms in Sanilac County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

34.     Plaintiff Kurtis Kreger is a Michigan resident who farms in Sanilac County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

35.     Plaintiff Timothy Kubacki is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

36.     Plaintiff Kundinger Farms, Inc. is a Michigan farm that farms in Huron County and Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

37.     Plaintiff Laracha Farms, LLC is a Michigan farm that farms in Tuscola County and Saginaw County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

38.     Plaintiff Matthew Lutz is a Michigan resident who farms in Huron County and Tuscola County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

39.     Plaintiff R.J. Farms, Inc. is a Michigan farm that farms in Huron County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

40.     Plaintiff Robert Rathje is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

41.     Plaintiff Rayl Farms, Inc. is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

42.     Plaintiff Richmond Brothers Farms, LLC is a Michigan farm that farms in Huron County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

43.     Plaintiff Rodammer Farms, Inc. is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

44.     Plaintiff Russell Transport, Inc. is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

45.     Plaintiff Daniel Sahr is a Michigan resident who farms in Saginaw and Tuscola Counties, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

46.    Plaintiff Leasly Schaper is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

47.    Plaintiff Gregory Schian is a Michigan resident who farms in Saginaw County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

48.    Plaintiff Jeffery Schian is a Michigan resident who farms in Saginaw County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

49.    Plaintiff John Schian is a Michigan resident who farms in Saginaw County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

50.    Plaintiff Brad Singer is a Michigan resident who farms in Huron County and Tuscola County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

51.    Plaintiff Stacer Farm Ltd Partnership is a Michigan farm that farms in Huron County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

52.    Plaintiff Mark Stambaugh is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

53.     Plaintiff Donald Stecker is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

54.     Plaintiff Vern Stephen is a Michigan resident who farms in Bay County and Saginaw County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

55.     Plaintiff Lucas M. Stockmeyer is a Michigan resident who farms in Tuscola County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

56.     Plaintiff Robert Stockmeyer is a Michigan resident who farms in Tuscola County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

57.     Plaintiff Kendall Stoeckle is a Michigan resident who farms in Huron County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

58.     Plaintiff Stoutenburg Farms, a Michigan partnership, farms in Sanilac County, Michigan, and grew dry beans (navy or small red beans) insured by the DBRE in 2015.

59.     Plaintiff Three-R Farm, Inc. is a Michigan farm that farms in Huron County and Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

60.     Plaintiff Vader and Son, LLC is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

61.     Plaintiff Vader Farms, Inc. is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

62.     Plaintiff Vanhoost Farms, Inc. is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

63.     Plaintiff Glenn L. Vogel is a Michigan resident who farms in Tuscola County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

64.     Plaintiff Joseph Vohwinkle is a Michigan resident who farms in Iosco County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

65.     Plaintiff Tom Wadsworth is a Michigan resident who farms in Sanilac County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

66.     Plaintiff Jim Wilkinson is a Michigan resident who farms in Tuscola County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

67.     Plaintiff Terry Wood is a Michigan resident who farms in Tuscola County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

68.     Plaintiff Don Zaremba is a Michigan resident who farms in Bay County, Michigan, and who grew dry beans (navy or small red beans) insured by the DBRE in 2015.

69.     Plaintiff Zimmer Farms, Inc. is a Michigan farm that farms in Tuscola County, Michigan, and that grew dry beans (navy or small red beans) insured by the DBRE in 2015.

70.     Defendant United States Department of Agriculture ("USDA") is a department of the United States government and is the parent agency of Defendant RMA, which in turn administers Defendant FCIC, a wholly government-owned corporation created under the Federal Crop Insurance Act, 7 U.S.C. §1501, et seq.

## JURISDICTION AND VENUE

71.     Plaintiffs' cause of action arises from the administrative determinations that relate to the approval of the Dry Bean Remand Implementation on May 18, 2023.

72.     Plaintiffs' administrative remedies were fully exhausted as of May 18, 2023, when Defendant FCIC, by and through its Board of Directors, approved the Dry Bean Remand Implementation, "which affirms the approval of the prior Submission the Dry Bean Modification and Expansion, in full and specifically with respect to the contingency [default] pricing methodology." This approval was made without any analysis, contrary to the Order of this Court directing remand of the matter.

73.     This Court has jurisdiction over the subject matter of this action by virtue of 5 U.S.C. §701 et seq., 7 U.S.C. §6999, 28 U.S.C. §1331, and 28 U.S.C. §1367. Sovereign immunity has been waived by 5 U.S.C. §702 and by 7 U.S.C. §6999.

74.     Venue is proper in this district court pursuant to the terms of the applicable crop insurance policy, including the DBRE, the Common Crop Insurance Policy, and the Dry Bean Crop Provisions; 28 U.S.C. §1391(e); and 7 U.S.C. §1506(d).

## FACTS

75.     Revenue protection crop insurance protects farmers against a decline in market price.  It has been offered for many years for crops traded on national markets such as corn, soybeans, and wheat.

76.     In 2012, the FCIC Board of Directors approved a revenue protection insurance pilot program for dry pea and dry bean crops in Minnesota and North Dakota, that became effective in 2013.

77.     This pilot program was developed by Watts and Associates, a privately owned economic consulting firm located in Billings, Montana, pursuant to 7 U.S.C. §1508(h).

78.     In 2013, an expansion of the pilot program was approved by the FCIC to include dry bean farmers in Michigan, effective in 2014.

79.     According to the FCIC, in 2015, Michigan dry bean farmers purchased 1,286 DBRE policies, covering 151,464 acres.  Of those, plaintiffs estimate that 71,600 acres had navy beans or small red beans growing on them.

80.     The DBRE (**Exhibit A**, ¶ 7) provides for "Price Discovery," and specifies that the RMA will set a "projected price" for each type of insured bean "no later than the

third business day of March."  The Complete Crop Insurance Policy includes the DBRE (**Exhibit A**), the Common Crop Insurance Policy (**Exhibit B),** and the Dry Bean Crop Provisions (**Exhibit C**).

81.     The DBRE (**Exhibit A**, ¶ 7) also provides that the RMA will set a "harvest price" for each type of insured bean "not later than December 15 of the crop year."

82.     The difference between the "projected price" and the "harvest price" is used to calculate the amount of indemnity owed to insured farmers under the DBRE in the event of a market price decline.  See **Exhibit A**, ¶ 5.

83.     Paragraphs 2 and 7 of the DBRE (**Exhibit A**) specify that the "harvest price" is determined by the "market price," which in turn is determined by reference to the "Bean Market News."

84.     The Bean Market News is a publication of the Agriculture Marketing Service (AMS), an agency of the USDA.

85.     Paragraph 7(e)(2)(C) of the DBRE (**Exhibit A**) provides that "A harvest price will not be established if there is a market price for fewer than 50% of the dates of publication [of the Bean Market News] included in the period defined in 2(A)."  That period begins on "the first business day in September" and ends on the "last business day of November."  The Bean Market News is published weekly.

86.     On March 3, 2015, the RMA set a projected price for navy and small red beans in Michigan and for dark red kidney beans in Minnesota and North Dakota.

87.     During 2015, Plaintiffs' insurers sold DBRE insurance coverage to Plaintiffs, which provided revenue protection for navy and small red beans in Michigan.

Plaintiffs paid an additional premium for optional DBRE coverage, over and above the premium paid for basic crop insurance.

88.     In 2015, the Bean Market News did not publish market prices for navy and small red beans in Michigan for 50% or more of the publishing dates between September and November.

89.     Just once, in 2011, during the eight years before 2015 (2007-2014), did the Bean Market News publish the specified number of market prices during the specified period for all three bean varieties (navy and small red in Michigan and dark red kidney in Minnesota/North Dakota).  Therefore, it was not just foreseeable, but very likely, that the Bean Market News would not publish the specified number of market prices during the specified period in 2015.

90.     The DBRE, (**Exhibit A**, ¶ 7(d)), provides: "Section 7(e)(3) applies in the case that either a projected price or a harvest price cannot be determined in the manner described in the following provisions."

91.     Section 7(e)(3) of the DBRE (**Exhibit A**) addresses the procedure to be followed "[i]f a **projected price** for any of these types cannot be determined as described herein," but it does not address the procedure to be followed if a **harvest price** cannot be determined as described.  Emphasis added.

92.     The DBRE (**Exhibit A**) at paragraph 3(c) states in part: "In lieu of section 3(c)(5) of the Basic Provisions:

                                    *          *          *

          (2)     If the harvest price cannot be calculated for the crop
                  year for a type for which a projected price was
                  determined in accordance with section 7 of this

15

endorsement, the harvest price will be equal to the projected price."

93.     The Common Crop Insurance Policy (**Exhibit B**), of which the DBRE is "attached to and made part of" states at ¶ 3(c)(5)(ii) that "[i]f the . . . harvest price cannot be calculated for the current crop year under the provisions [of the policy],"

*     *     *

(A)     Revenue protection will continue to be available; and

(B)     The harvest price will be determined and announced by FCIC.

94.     The Dry Bean Revenue Insurance Standards Handbook (**Exhibit D**) provides, at Part 2, Responsibilities, ¶N, in the event of an "Inability to Determine a Harvest Price but a Projected Price was Established as Defined. . . . RMA will establish the harvest price."

95.     7 U.S.C. §1508(c)(5) provides in part that " . . . the Corporation shall establish . . . the price level ( . . . "expected market price") of each agricultural commodity for which insurance is offered", that "the expected market price of an agricultural commodity (i) may be based on the actual market price of the agricultural commodity at the time of harvest, as determined by the Corporation," and that "(ii) in the case of revenue . . . plans of insurance, may be the actual market price of the agricultural commodity as determined by the Corporation."

96.     Actual market prices for navy and small red beans in Michigan during September through November of 2015 were contemporaneously available and are available now from the grain elevator processors who bought the subject insured beans

from the Plaintiff farmers.  These actual market prices show a great decline from the projected prices for the subject beans.

97.    On December 15, 2015 the RMA set the harvest prices for navy and small red beans at an amount equal to the projected prices – an act that was contrary to law, that was contrary to the intent and purpose of the DBRE, that negated the revenue protection insurance coverage provided by the DBRE, that deprived Plaintiffs of the DBRE indemnity to which they are entitled, and that was grossly and palpably unfair.

98.    Despite the act of the RMA negating the revenue protection afforded by the DBRE, Plaintiffs' insurers have retained the additional premium paid by Plaintiffs for DBRE coverage.

99.    On February 16, 2016, Gregory Ackerman, acting as the chair of the Michigan Bean Commission, and on behalf of all Plaintiffs, together with Carl Bednarski, President of the Michigan Farm Bureau, sent a request to the FCIC's Board of Directors requesting that the harvest price be recalculated so that it reflected the actual market price.  **Exhibit E**, letter of February 16, 2016.

100.   On March 8, 2016, the chairman of the FCIC, Dr. Robert Johansson, denied Mr. Ackerman's request.  **Exhibit F**, letter of March 8, 2016.

101.   On April 13, 2016 Mr. Ackerman requested a determination from the RMA and the National Appeals Division (NAD) of the USDA that the March 8, 2016 letter of Dr. Johansson constituted a "determination made by FCIC that is a matter of general applicability [that] is not subject to administrative review," in accordance with the requirements of Section 20(k) of the basic provisions, (**Exhibit B**) and pursuant to 7 C.F.R. 400.91(e), *inter alia*.

102.    On April 28, 2016, the RMA, through its deputy administrator for insurance services, Robert Ibarra, "decline[d] to render a determination of general applicability . . . because the RMA has not made any determinations in regard to your client's policy." **Exhibit G**.

103.    On June 6, 2016, the NAD, by its deputy director, James T. Murray, issued a decision that the FCIC determination was a matter of general applicability and thus not appealable within the NAD.

104.    On June 5, 2017, Plaintiffs brought suit against the Defendants alleging a violation of the Administrative Procedure Act. Based largely on a false representation, Summary Judgment was granted to the Defendants.

105.    Summary judgment was reversed by the Sixth Circuit Court of Appeals. *Ackerman v. United States Dept. of Agriculture*, 995 F. 3d 528, 533-34 (6th Cir. 2021). The Court found that the Agency's decision to approve the Michigan submission was "without observance of procedure required by law." The Sixth Circuit also noted that the DBRE insurance sold to Plaintiffs was "essentially worthless, as the FCIC itself acknowledged in a 2016 letter to the Michigan farmers."

106.    The Sixth Circuit remanded the case to this Court for "further proceedings." On remand, this Court remanded the case to the FCIC for further consideration. The remand order stated that "the FCIC must treat the Michigan submissions as a new 508(h) submission and carefully consider whether 'the interests of [farmers] are adequately protected.'" *See,* Dec. 29, 2021, Order (**Exhibit H**).

107.    By Final Resolution after remand dated May 18, 2023, the Board of Directors of the FCIC approved the Dry Bean Remand Implementation, "which affirms

the approval of the prior Submission the Dry Bean Modification and Expansion, in full and specifically with respect to the contingency [default] pricing methodology."

108.    The Final Resolution also stated that "the Dry Beans Revenue participations [sic] strongly suggests growers are happy with the product design, as even after the contingency [default] pricing methodology triggered in 2015, sales only increased in later years, thus the interest of producers seems protected."

109.    No other analysis of the effect of the default pricing mechanism on Plaintiffs and other farmers was made.

110.    This decision was a final administrative determination.  **Exhibit I**.

### <u>COUNT I</u>

111.    Plaintiffs hereby repeat and incorporate each and every allegation contained in the prior paragraphs as if fully set forth herein.

112.    The applicable insurance policy (including the DBRE, (**Exhibit A**), the Common Crop Insurance Policy (**Exhibit B**), and the Dry Bean Crop Provisions (**Exhibit C**)); the Dry Bean Revenue Insurance Standards Handbook (**Exhibit D**); 7 U.S.C. §1508; the common law; and basic principles of equity all dictate that the harvest price be calculated by the RMA based on actual market prices.

113.    That the Final Resolution of the FCIC dated May 18, 2023, affirming without further analysis the prior Submission the Dry Bean Modification and Expansion, was arbitrary, capricious, an abuse of discretion, and not in accordance with law; was contrary to statutes and other law; was without observance of procedure required by law; and was unwarranted by the facts.

19

WHEREFORE, Plaintiffs request the Court to declare the Final Resolution of the FCIC dated May 18, 2023 to be contrary to law, and to order (enjoin) the RMA to set the harvest price at an amount based upon actual market prices, and to order such other relief as may be necessary to ensure that the proper amount of indemnity is paid to Plaintiffs.

## COUNT II

114.    Plaintiffs hereby repeat and incorporate each and every allegation contained in the prior paragraphs as if fully set forth herein.

115.    That the DBRE lacks an essential contract provision such that the purpose of the contract and the intent of the parties are subverted by its absence.  To wit, the DBRE omits the procedure to be followed "in the case that . . . a harvest price cannot be determined in the manner described [in the DBRE]."  DBRE ¶ 7(d).  The parties to the contract intended that the harvest price be set by the RMA based on actual market prices in the event that the harvest price could not be determined in the manner described in the DBRE.

116.    That the essential contract provision was absent from the DBRE at the time that the DBRE was approved by the FCIC and RMA in 2012 and 2013.

117.    That the RMA and FCIC are required by 7 U.S.C. 1508(c)(5) to set harvest prices that reflect actual market prices.  The RMA and FCIC may approve policies submitted pursuant to 7 U.S.C. 1508(h) only if those policies adequately protect the interests of producers, are viable and marketable, and provide insurance coverage in a significantly improved form.  The missing essential contract provision rendered the DBRE non-viable and non-marketable; precluded the DBRE from protecting the

interests of producers; and precluded the DBRE from providing insurance coverage at all, let alone in a significantly improved form.

118.   That the administrative determination of the FCIC affirming the approval of the DBRE without this essential contract provision was arbitrary, capricious, an abuse of discretion, and not in accordance with law; was contrary to statutes and other law; was without observance of procedure required by law; and was unwarranted by the facts.

119.   That either the Plaintiffs and the insurance companies both believed and relied on the RMA and FCIC's averment that the DBRE in fact provided revenue protection insurance coverage to Plaintiffs, or, Plaintiffs unilaterally believed that the DBRE provided such coverage and acted in reliance on that belief, while the insurers knew that it did not, but accepted payment of DBRE premiums by Plaintiffs, knowing there was no DBRE coverage.  This mutual mistake or unilateral mistake with fraud necessitates reformation of the DBRE to reflect the intent of the parties at the time of contracting.

120.   That the FCIC affirmation of the approval and interpretation of the DBRE subverted the intent and understanding of the parties to the contract, resulting in a complete failure of consideration by precluding even the possibility of recovery, such that it would be inequitable for the DBRE premium not to be reimbursed to Plaintiffs.

WHEREFORE, Plaintiffs request the Court to declare the 2023 administrative determination of the FCIC affirming the approval of the DBRE in the absence of the essential contract provision was arbitrary and capricious, was contrary to law, was without observance of procedure required by law, and ignored a fundamental aspect of the problem; to declare that the Court will reform the contract by supplying the essential

contract provision and ordering (enjoining) the FCIC and RMA to set the harvest price at an amount based on actual market prices; and to order such other relief as may be necessary to ensure that the proper amount of indemnity is paid to Plaintiffs or, in the alternative, to declare that the DBRE, as approved and interpreted by the FCIC and RMA, did not actually provide the promised insurance coverage, but instead provided only the illusion of insurance coverage and resulted in a failure of consideration; to order that the DBRE portion of the insurance contracts be rescinded by the RMA; and to order such other relief as may be necessary to ensure that the premium payments attributable to the DBRE are reimbursed to Plaintiffs.

Respectfully Submitted,

JOHN D. TALLMAN, PLC
Attorneys for Plaintiffs

Dated: **07/29/2025**                    BY: ***/s/ John D. Tallman***
                                          John D. Tallman (P32312)

                                          4020 East Beltline Ave., NE
                                          Suite 101
                                          Grand Rapids, MI  49525
                                          (616) 361-8850
                                          jtallmanlaw@gmail.com